# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

HARIS HASIC; HASIC, LLC, a
Michigan limited liability company;
RICHARD R. BOONE; AZIZ FETINCI;         Case No. 25-10288
and ARMADA TRUCKING SERVICES,           Hon.
LLC, a Michigan limited liability company,

       Plaintiffs,

v

VELIC TRANSPORTATION INC., a Michigan
company; and ALIS VELIC,

       Defendants.

---

HERTZ SCHRAM PC
By:   Steve J. Weiss (P32174)
      Daniel W. Rucker (P67832)
Attorneys for Plaintiffs
1760 S. Telegraph Road, Suite 300
Bloomfield Hills, MI  48302
(248) 335-5000

---

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs, Haris Hasic; Hasic, LLC; Richard R. Boone; Aziz Fetinci; and

Armada Trucking Services, LLC, on behalf of themselves and all others similarly

situated, by and through their attorneys, Hertz Schram PC, for their Class Action

Complaint and Jury Demand against Defendants Velic Transportation Inc., a

Michigan company ("VTI"), and Alis Velic ("Velic"), states as follows:

1

## RECORDS PRESERVATION NOTICE

You are hereby notified that you remain subject to the continuing duty to preserve during the pendency of this action all records and documents in all forms and formats (digital, electronic, film, magnetic, optical, print, etc.) that are relevant or may lead to relevant information, and to notify your employees, agents, and contractors that they are required to take appropriate action to do the same.

## NATURE OF THE  ACTION

1.      This is a class action against Defendants VTI and Velic pursuant to which Plaintiffs, as class representatives on behalf of themselves and all others similarly situated, who are independent truck owner-operators, challenge unlawful violations by Defendants through Defendants' Contractor Agreements (the "Leases") and payment practices, including the violation of Federal commercial transportation laws and regulations as follows:

      a. Defendants' Leases and payment practices unlawfully require Plaintiffs and Class Members to accept reduced and delayed compensation based on false or misleading information regarding the gross revenue paid for the freight hauled.

      b. Defendants' Leases and payment practices unlawfully require Plaintiffs and Class Members to provide escrow payments for unsupported and improper purposes.

2

    c. Defendants' Leases and payment practices unlawfully fail to provide Plaintiffs and Class Members with written terms that comply with Federal laws and regulations in addressing receipts for equipment, insurance costs and documentation, charge back items and documentation, escrow payments and refunds, and compensation and shipment revenue information, among other things.

    d. Defendants' Leases and payment practices unlawfully conceal, misrepresent, and/or omit information necessary for Plaintiffs and Class Members to protect their rights and interests.

2.    Plaintiffs further allege that Defendants' Leases and payment practices violate the laws of the State of Michigan as to all Class Members, who each contracted with and engaged in business with Michigan Defendants, through breaches of contract and fraudulent concealment, among other things.

3.    Plaintiffs seek declaratory and injunctive relief; an immediate accounting of all funds paid or promised to Defendants for any freight hauled by any Class Member; an immediate accounting of escrow funds and other funds deposited with or paid to Defendants by any Class Members during their association with Defendants; the payment to Class Members of all funds improperly withheld or retained by Defendants for any load hauled by any Class Member; the return of all

escrow and other funds improperly retained by Defendants; Defendants' payment of interest as calculated under applicable law for all payments, escrow, and other funds improperly withheld or retained by Defendants; Defendants' payment of attorneys' fees and costs incurred by the Plaintiffs and/or Class Members in this action; and all other relief deemed appropriate by the Court. Plaintiffs further request an immediate order enjoining and restraining Defendants from transferring, diverting, or otherwise concealing the Class Members' payments, escrow, other funds, and other amounts owed by Defendants to any Class Members or potential Class Members.

## **PARTIES, JURISDICTION, AND VENUE**

4.     Plaintiff Haris Hasic is an individual residing in Center Line, County of Macomb, State of Michigan, in the Eastern District of Michigan ("ED Mich."), and he is a citizen of the State of Michigan.

5.     Plaintiff Hasic, LLC, is an entity that does business in the State of Michigan, including the County of Macomb, State of Michigan.

6.     Plaintiff Richard R. Boone is an individual residing in White Pigeon, County of St. Joseph, State of Michigan, in the Western District of Michigan, and he is a citizen of the State of Michigan.

7.     Plaintiff Aziz Fetinci is an individual residing in Warren, County of Macomb, State of Michigan, in the Eastern District of Michigan, and he is a citizen of the State of Michigan.

4

8.    Plaintiff Armada Trucking Services, LLC, is an entity that does business in the State of Michigan, including the County of Macomb, State of Michigan.

9.    Defendant Alis Velic is an individual residing in the State of Michigan who does business in the County of Macomb, State of Michigan.

10.    Velic Transportation Inc., a Michigan company, has or has had principal places of business located at 35375 Groesbeck Highway, Clinton Township, MI 48035; as well as 16950 19 Mile Road, Suite 5B, Clinton Township, MI 48038; as well as 34532 Beaconsfield, Clinton Township, MI 48036; as well as 23142 Sherwood Ave, Suite 2, Warren, MI 48091; as well as 19691 15 Mile Road, Clinton Township, MI 48035; and does business in the State of Michigan as well as North Carolina, Kentucky, Ohio, Indiana, Texas, Missouri, Tennessee, Illinois, Alabama, and Pennsylvania, as well as the District of Columbia and all of the other States aside from Hawaii and Alaska.

11.    This action arises in part under 49 U.S.C. §§ 14102 and 14704(a)(1) and (2), and 49 C.F.R. Part 376 *et seq.*, for violation of the leasing regulations governing the terms and conditions pursuant to which motor carriers may lease equipment from owner-operators for the transport of property.

4922-1004-2900, v. 2

12.     This United States District Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, for federal question jurisdiction, because the claims herein arise under the laws of the United States.

13.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1337, for proceedings arising under an act of Congress regulating commerce, because the claims herein arise under the laws of the United States regulating commerce and the activities of motor carriers engaged in the transportation of property in interstate commerce.

14.     This Court also has supplemental jurisdiction over all state law claims made in this action pursuant to 28 U.S.C. § 1367(a) because the claims are so related that they form part of the same case or controversy under Article III of the United States Constitution.

15.     This Court has personal jurisdiction over Defendants because they reside in and/or conduct business in Michigan and have sufficient minimum contacts with Michigan.

16.     This Court has specific jurisdiction over Defendant because they reside in the forum and/or have purposefully availed themselves of this forum by engaging in business activity in the forum.

17.     Venue in this judicial District is proper pursuant to 28 U.S.C. § 1391(b)(1)(2), (c)(1)(2), as a defendant resides in the judicial district, a substantial

4922-1004-2900, v. 2

part of the acts and practices complained of herein occurred in this judicial district,

and 14 U.S.C. § 14704(d)(1), as multiple Plaintiffs reside in this judicial district, and

the principal operating office of the carrier is located in this judicial district.

## **CLASS ALLEGATIONS**

18.     Plaintiffs bring this action on behalf of themselves as individuals and

as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the

Federal Rules of Civil Procedure on behalf of the following class (collectively, the

"Class"):

> *All independent owner-operators who leased equipment to and/or operated equipment on behalf of Defendants Velic Transportation Inc. and/or Alis Velic at any time within 4 years prior to the date this action was filed or any time after this action was filed and/or who had an agreement to lease or operate equipment in effect at any time within 4 years prior to the date this action was filed or any time after this action was filed and/or whose claims are preserved by tolling arising from Defendants concealment.*

19.     <u>Numerosity and Impracticability of Joinder</u>. Federal Rule of Civil

Procedure 23(a)(1): The members of the Class are so numerous that individual

joinder of all Class members is impracticable. On information and belief, there are

already dozens of independent truck owner-operators that Plaintiffs have identified

as potential Class Members for only a fraction of the Class period extending over

the past several years. For instance, Plaintiffs identified at least 22 drivers on April

20, 2023, who were contracted to perform duties for Defendants. Defendants'

International Fuel Tax Agreement (IFTA) reports show 29 and 33 drivers at different

times in January of 2020 and January of 2021. The dozens of potential Class Members identified by Plaintiffs are owner-operators along only a subset of the routes Defendants service, so the number of potential Class Members is anticipated to be in the hundreds. Each of these owner-operators is entitled to payment or return of funds improperly withheld or retained by Defendants. Individual joinder of all potential class members is impracticable.

20. <u>Commonality and Predominance</u>: Certification of Plaintiffs' claims for class-wide treatment is appropriate because proof of the elements of the claims on a class-wide basis will involve the same evidence that would be used to establish those elements in individual actions asserting the same claims. In accord with Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3), this action involves common questions of law and fact that predominate over any questions affecting individual Class Members, including, without limitation:

a. Defendants and prospective owner-operator Class Members entered into Leases that were identical or substantially identical in relevant aspects;

b. Defendants engaged in identical or substantially identical payment practices relative to the prospective owner-operator Class Members;

c. Defendants engaged in a common pattern and practice in violating the Federal commercial transportation laws and State of Michigan laws related to contracts, performance, and/or fraud, all relative to the prospective owner-operator Class Members;

8

      d.    Defendants' misconduct, failure to act, and violations of Federal commercial transportation laws and State of Michigan law affect prospective owner-operator Class Members similarly, and, therefore, central questions of fact are common to the class as a whole; and

      e.    Defendants' misconduct, failure to act, and violations of Federal commercial transportation laws and State of Michigan law with regard to funds improperly withheld or retained by Defendants is generally applicable to the class, which makes declaratory and injunctive relief appropriate with respect to the class as a whole.

21.    <u>Typicality</u>: Federal Rule of Civil Procedure 23(a)(3): Plaintiff's claims are typical of the other Class Members' claims as a whole.

22.    <u>Adequacy</u>: Federal Rule of Civil Procedure 23(a)(4): Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action and collective action litigation; and Plaintiffs intend to prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiff and their counsel.

23.    <u>Declaratory and Injunctive Relief</u>: Federal Rule of Civil Procedure 23(b)(2): Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

9

24.   <u>Superiority</u>: Federal Rule of Civil Procedure 23(b)(3): A class action is superior in this case to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class Members involve the same types of misconduct, failure to act, and violations of Federal commercial transportation laws and State of Michigan law by Defendants. Individual litigation will likely create an unnecessary and undue burden upon the court systems. Individualized litigation may also result in varying adjudications requiring Defendants to behave according to incompatible standards of conduct depending upon the manner in which multiple courts resolve the same issues. Individual litigation may also result in inconsistent or discordant dispositive rulings by multiple courts regarding common issues of fact and law, which may create an incentive to procedurally delay or facilitate resolution in one court or another. Class action further permits the protection of Class Members interests as a whole, which are not currently protected.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

25.   Plaintiffs and prospective Class Members are owner-operators are small businesspersons who own or control truck tractors and/or truck trailers that are used to transport property over the highways of the United States. Such owner-operators comprise one of the primary sectors of the interstate motor carrier industry,

and as of July 2024, industry reports from the American Trucking Associations and the Bureau of Transportation Statistics indicate there are approximately 3.55 million truck drivers employed in the United States, and as of November 2023, nearly 1 million of the drivers were owner-operators.

26.     Owner-operators transport commodities, act as independent contractors, and lease or otherwise provide their equipment and services to motor carriers that are regulated by the United States Department of Transportation (USDOT) regulations in their ability to contract with shippers to transport property.

27.     Defendant VTI is a motor carrier regulated by the USDOT that primarily engage in the enterprise of providing transportation services to the shipping public.

28.     Defendant VTI is reported to be an authorized carrier, as defined by 49 C.F.R. § 376.2(a), have a USDOT number of 1459126, operate 43 trucks, own only 8 tractors and 43 trailers, and use the services of 40 drivers in 2023 to operate interstate carrier services over a distance of 1,703,891 miles.

29.     The relationship between independent truck owner-operators and regulated motor carriers is set forth in an agreement between the parties that is regulated by the USDOT under 49 U.S.C. § 14102 *et seq*. and 49 C.F.R. Part 376 *et seq*.

**The Leases**

30.     Plaintiffs and Class Members entered into Lease agreements with VTI, of which Velic is the owner, president, treasurer, secretary, and sole director.

31.     Under the Leases, Plaintiffs and the Class Members leased their trucks and equipment to Defendant VTI and contracted for the services of the Plaintiffs and Class Members as operators.

32.     The terms of the Leases between Plaintiffs and Defendants are the same as or substantially similar to the agreements between the other Class Members and Defendants.

33.     Plaintiffs were terminated from or compelled to terminate their contractual relationship with VTI because of the unfair and oppressive conditions imposed upon them by the Leases and Defendants' improper withholding or retention of funds belonging to Plaintiffs and Class Members. Defendants improperly withheld compensation due for loads hauled, improperly retained escrow and other funds deducted from compensation, and affirmatively misled Plaintiffs and Class Members regarding the revenue derived from loads hauled and the amounts due therefrom.

34.     The Leases are standard agreements which Plaintiffs and each Class Member had to enter into to lease a truck tractor and other equipment to Defendants for use by Defendants in their motor carrier business.

4922-1004-2900, v. 2

35.     An exemplar of the Leases entered into by Plaintiffs and Defendants is typical of each Plaintiff's and Class Member's Lease with Defendants and is attached hereto as **Exhibit 1**.

36.     Pursuant to the Lease, Plaintiffs and Class Members contracted with VTI, with resident agent Lejla Graho, Velic, or another company representative signing.

37.     By its own terms, the Lease indicates that VTI is a Carrier regulated by the Interstate Commerce Commission and by 49 C.F.R. § 376 *et seq*, including several specifically cited regulations.

38.     The Lease meets the definition of a "lease" pursuant to 49 C.F.R. § 376.2(e) because it comprises a "contract or arrangement in which the owner grants the use of equipment, with or without driver, for a specified period to an authorized carrier for use in the regulated transportation of property, in exchange for compensation."

39.     Plaintiffs and Class Members are "lessors" and "owners" within the meaning of 49 C.F.R. § 376.2(d),(f).

40.     Defendants are "lessees" within the meaning of 49 C.F.R. § 376.2(g).

41.     The Lease is required to be in writing pursuant to 49 C.F.R. § 376.11(a) and contain the elements of § 376.12, but Defendants failed to provide Plaintiffs and Class Members with portions of the Lease in writing, including, among other things,

13

a.  Failing to provide that the carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease and shall assume complete responsibility for the operation of the equipment (49 C.F.R. § 376.12(c)(1); Lease ¶ 19(A));

b.  Failing to comply with the requirement that the "amount to be paid by the authorized carrier for equipment and driver's services shall be clearly stated on the face of the lease or in an addendum which is attached to the lease" (49 C.F.R. § 376.12(d));

    i.  Instead, Defendants stated in Lease paragraph 4 and/or Lease Exhibit B false percentage compensation rates that Defendants did not provide to Plaintiffs and Class Members;

    ii.  Defendants concealed or omitted reporting the true value of the shipments, including stating false shipping values or sending information with the false shipping values visible and the true shipping values covered, so that Plaintiffs and Class Members were not aware of the true values and could not protect their interest in the stated percentage compensation rate;

14

iii.  Defendants did not specify in the Lease the compensation the variable percentage arrangement applied in practice through Defendants' concealment and omissions.

c.  Failing to "clearly specify who is responsible for loading and unloading the property onto and from the motor vehicle, and the compensation, if any to be paid for this service" (49 C.F.R. § 376.12(e)), but instead stating an incomplete sentence – "that the compensation for any such loading or unloading service" – such that it is not stated what compensation is due to the drivers for loading and unloading (Lease ¶ 19(F));

d.  Failing to "clearly specify" that Plaintiffs and Class Members shall be entitled to receive fuel surcharge payments from customers, and retaining those surcharges for the Defendants' benefit even though the Lease requires that the contractors/drivers are responsible for the fuel costs (Lease ¶ 19(B); 49 C.F.R. § 376.12(e));

e.  Failing to state that "payment to the lessor shall be made within 15 days after submission of the necessary delivery documents concerning a trip in the service of the authorized carrier" (49 C.F.R. § 376.12(f)), and instead contradicting the regulation by stating that "Payments by the Carrier to Contractor for the use and operation of

15

equipment shall be made within twenty-one (21) days" after submission of various documentation beyond what is permitted in the regulation, such as bills of lading to which no objection has been made (Lease ¶¶ 4, 19(E)), and Defendants actually delayed payments beyond the 15-day requirement;

f.  Failing to state and to provide that "[w]hen a lessor's revenue is based on a percentage of the gross revenue for a shipment," the drivers shall receive "a copy of the rated freight bill, or . . . any other form of documentation actually used for a shipment containing the same information that would appear on a rated freight bill" (49 C.F.R. § 376.12(g)), but instead stating that Defendants shall give the driver-contractor a copy of the rated freight bill *but* "(subject to Carrier's right to delete information of Shippers and Consignees)," and in practice Defendants omitted, concealed, deleted, and/or modified the actual freight charges (Lease ¶ 4);

g.  Failing to clearly specify all charge-back items that may be deducted from the Plaintiffs' and Class Members' compensation, failing to state that "[t]he lessor shall be afforded copies of those documents which are necessary to determine the validity of the charge," and failing to state the amounts of insurance to be deducted (49 C.F.R.

16

§ 376.12(h),(j),(k)), and instead stating that an "escrow account in the amount of one thousand dollars ($1000.00) will be kept by the Carrier for each Contractor to account for *any unexpected costs that may occur*" (Lease ¶ 15) and the Carrier may "deduct the cost of such insurance" (Lease ¶ 8), while also failing to agree to pay interest at least quarterly on the funds held in escrow by the carrier, and failing to provide the conditions that must be fulfilled in order to have the escrow fund returned to the drivers;

h. Failing to include provisions within the Lease and to comply with 49 C.F.R. § 376.12(k), in the following manner, among other things:

   i. § 376.12 (k)(2), by failing to identify "[t]he specific items to which the escrow fund can be applied";

   ii. § 376.12(k)(3), by failing to "provide an accounting";

   iii. § 376.12(k)(4), by failing to notify the Plaintiffs and Class Members of "[t]he right of the lessor to demand to have an accounting for transactions involving the escrow fund at any time";

   iv. § 376.12(k)(5), by failing to notify the Plaintiffs and Class Members of, and to comply with the requirement that, "the

17

carrier shall pay interest on the escrow fund on at least a quarterly basis"; and

v. § 376.12(k)(6), by failing to notify the Plaintiffs and Class Members of "[t]he conditions the lessor must fulfill in order to have the escrow fund returned."

42.     Defendants have failed to return escrow funds improperly withheld or retained by Defendants.

### **Defendant's Concealed and Omitted Information Relevant to Plaintiffs' and Class Members' Compensation.**

43.     Defendants concealed and omitted information showing the true value of shipments upon which Plaintiffs' and Class Members' percentage compensation rate was based.

44.     Instead, Defendants provided false shipment value information to Plaintiffs and Class Members and instructed their employees to do the same, including the following examples, which reductions are in addition to further charge-backs and escrow reductions:

   a. Misrepresenting to a Plaintiff a shipment value so that a Plaintiff was paid 12% less than the agreed rate;

   b. Misrepresenting to a Plaintiff a shipment value so that a Plaintiff was paid 20% less than the agreed rate;

   c. Misrepresenting to a Plaintiff a shipment value so that a Plaintiff was paid 26% less than the agreed rate;

18

d. Misrepresenting to a Plaintiff a shipment value so that a Plaintiff was paid 33% less than the agreed rate;

e. Misrepresenting to a Plaintiff a shipment value so that a Plaintiff was paid 21% less than the agreed rate;

f. Misrepresenting to a Plaintiff a shipment value so that a Plaintiff was paid 12% less than the agreed rate;

g. Sending to one or more Plaintiffs, images of VTI computer screens showing the false value reported to the drivers but covering up the portion of the screen showing the full value of the rate actually paid;

h. Failing to make full and/or timely payments on or about August 18, 2023, contrary to 49 CFR 376.12(f);

i. Failing to make full and/or timely payments on or about June 2, 2023, contrary to 49 CFR 376.12(f);

j. Failing to make full and/or timely payments on or about April 21, 2023, contrary to 49 CFR 376.12(f);

k. Failing to make full and/or timely payments on or about March 3, 2023, contrary to 49 CFR 376.12(f);

l. Failing to make full and/or timely payments on or about February 17, 2023, contrary to 49 CFR 376.12(f);

m. Failing to make full and/or timely payments on or about January 13, 2023, contrary to 49 CFR 376.12(f);

n. Failing to make full and/or timely payments on or about January 6, 2023, contrary to 49 CFR 376.12(f);

o. Failing to make full and/or timely payments on or about December 16, 2022, contrary to 49 CFR 376.12(f);

p. Failing to make full and/or timely payments on or about December 9, 2022, contrary to 49 CFR 376.12(f);

q. Failing to make full and/or timely payments on or about November 18, 2022, contrary to 49 CFR 376.12(f); and

r. Failing to make full and/or timely payments on or about January 28, 2022, contrary to 49 CFR 376.12(f).

45. Defendants and their agents sent communications directing Defendants' employees not to alert the drivers, such as Plaintiffs and Class Members, of the true value of the shipments.

46. Defendant kept records showing the true values of shipments and other records showing the reduced value of shipments presented to drivers, such as Plaintiffs and Class Members, with the difference in payments improperly reduced by more than $248,000 for Plaintiffs.

47. Defendants concealed the true values of shipments from key employees who also bid on shipment values.

48. Defendants pressured these other key employees who performed bidding to also provide false reductions of the shipment values reported to drivers, and Velic made statements to these other key employees indicating that

a. The drivers do not deserve to as much as the actual shipment values for the destinations; and

b. The other key employees spoil the drivers by reporting the actual shipment values.

49.     When other key employees reported the true shipment values to drivers, Defendants interfered with those other employees' compensation and/or terminated their employment.

50.     Defendants used electronic administrative features in the transportation management systems software to prevent other employees, including those who bid on shipment values and accounting personnel, from seeing that Defendants were falsely reducing the shipment values reported to drivers.

51.     Defendants concealed their use of escrow funds from drivers and prevented departing drivers from receiving those funds for extended periods of time.

### Rights and Remedies of Persons Injured by Carriers or Brokers

52.     Violations of USDOT regulations permit a private right of action pursuant to 49 U.S.C. § 14704(a)(2).

53.     A person may file a civil action, pursuant to 49 U.S.C. § 14704(c)(1), to enforce liability against a carrier providing transportation.

54.     A person filing a civil action to recover for injuries by a motor carrier is entitled to an award of attorney's fees and costs pursuant to 49 U.S.C. § 14704(e), which states that "[t]he district court *shall* award a reasonable attorney's fee under this section" and "[t]he district court *shall* tax and collect that fee as part of the costs of the action." (Emphasis added.)

55.     Defendants are each liable for Plaintiffs' and Class Members' injuries for aiding, abetting, encouraging, or requiring the violations alleged herein. 49 C.F.R. § 390.13.

## COUNT I
### Violation of 49 C.F.R. § 376.12(d) *et seq.*
### Specify Compensation

56.     Plaintiffs incorporate by reference every factual allegation and the allegations of paragraphs 1 through 55 of this Complaint as if fully restated here.

57.     This claim is brought on behalf of the Plaintiffs and the Class.

58.     It is required of Defendants, pursuant to 49 C.F.R. § 376.12(d), that in the Lease the "amount to be paid by the authorized carrier for equipment and driver's services shall be clearly stated on the face of the lease or in an addendum which is attached to the lease."

59.     Defendants stated in Lease paragraph 4 and/or Lease Exhibit B that percentage compensation rates from the gross revenue of regulated freight applied, but Defendants failed to comply with and/or did not intend to comply with those percentage compensation rates.

60.     Defendants concealed or omitted reporting the true value of the shipments upon which the percentage compensation was due.

61.     Plaintiffs and Class Members were not aware of the true values and could not protect their interest in the stated percentage compensation rates.

22

62.     Defendants did not specify in the Lease the true compensation arrangement applied in practice through Defendants' concealment and omissions.

63.     Defendants are each liable for the acts and omissions of each other by virtue of their relationships of common control and ownership, among other things.

64.     Defendants acted to aid, abet, encourage, or require the violations of statute and regulations, concealment, and omissions of each other and/or through employees.

65.     Defendants are each liable for Plaintiffs' and Class Members' injuries by violating and continuing to violate 49 C.F.R. § 390.13, which states "No person shall aid, abet, encourage, or require a motor carrier or its employees to violate the rules of this chapter."

66.     As a direct and proximate result of Defendants' violation of statute and regulations, concealment, and omissions, Plaintiffs and Class members have sustained substantial damages and have been, and will continue to be, irreparably harmed.

67.     Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

68.     Defendants' violations, concealment, and omissions were performed wantonly, maliciously, oppressively, deliberately, with intent to defraud, and/or in reckless disregard of Plaintiffs' and Class members' rights. Defendants' conduct

23

warrants an assessment of punitive damages in an amount adequate to deter such violations and misconduct in the future.

**COUNT II**
**Violation of 49 C.F.R. § 376.12(g)** *et seq.*
**Documentation of Rates and Charges**

69.     Plaintiffs incorporate by reference every factual allegation and the allegations of paragraphs 1 through 55 of this Complaint as if fully restated here.

70.     This claim is brought on behalf of the Plaintiffs and the Class.

71.     It is required of Defendants, pursuant to 49 C.F.R. § 376.12(g), that the Lease state that "[w]hen a lessor's revenue is based on a percentage of the gross revenue for a shipment, the lease must specify that the authorized carrier will give the lessor, before or at the time of settlement, a copy of the rated freight bill, or, in the case of contract carriers, any other form of documentation actually used for a shipment containing the same information that would appear on a rated freight bill. Regardless of the method of compensation, the lease must permit lessor to examine copies of the carrier's tariff or, in the case of contract carriers, other documents from which rates and charges are computed."

72.     Defendants failed to comply with this requirement and, instead, omitted or concealed the true value of the shipments upon which the percentage compensation was due.

24

73.     Defendants' Leases state that they shall give the driver-contractor a copy of the rated freight bill *but* "(subject to Carrier's right to delete information of Shippers and Consignees)," and in practice Defendants omitted, concealed, deleted, and/or otherwise modified the actual freight charges (Lease ¶ 4).

74.     Plaintiffs and Class Members were not aware of the true values and could not protect their interest in the stated percentage compensation rates.

75.     Defendants did not specify in the Lease the true compensation arrangement applied in practice through Defendants' concealment and omissions.

76.     Defendants are each liable for the acts and omissions of each other by virtue of their relationships of common control and ownership, among other things.

77.     Defendants acted to aid, abet, encourage, or require the violations of statute and regulations, concealment, and omissions of each other and/or through employees.

78.     Defendants are each liable for Plaintiffs' and Class Members' injuries by violating and continuing to violate 49 C.F.R. § 390.13, which states "No person shall aid, abet, encourage, or require a motor carrier or its employees to violate the rules of this chapter."

79.     As a direct and proximate result of Defendants' violation of statute and regulations, concealment, and omissions, Plaintiffs and Class members have

25

sustained substantial damages and have been, and will continue to be, irreparably harmed.

80.     Defendants are liable to Plaintiff and Class members for damages in an amount to be proven at trial.

81.     Defendants' violations, concealment, and omissions were performed wantonly, maliciously, oppressively, deliberately, with intent to defraud, and/or in reckless disregard of Plaintiffs' and Class members' rights. Defendants' conduct warrants an assessment of punitive damages in an amount adequate to deter such violations and misconduct in the future.

## COUNT III
### Violation of 49 C.F.R. § 376.12(h) *et seq.*
### Documentation of Charge-back Items

82.     Plaintiffs incorporate by reference every factual allegation and the allegations of paragraphs 1 through 55 of this Complaint as if fully restated here.

83.     This claim is brought on behalf of the Plaintiffs and the Class.

84.     It is required of Defendants, pursuant to 49 C.F.R. § 376.12(h), that the Lease clearly specify all charge-back items that may be deducted from the Plaintiffs' and Class Members' compensation and state as to charge-back items that "[t]he lessor shall be afforded copies of those documents which are necessary to determine the validity of the charge."

4922-1004-2900, v. 2

85.     Defendants stated instead in the Lease that an "escrow account in the amount of one thousand dollars ($1000.00) will be kept by the Carrier for each Contractor to account for *any unexpected costs that may occur*." (Lease ¶ 15.)

86.     Defendants failed to comply with this requirement and, instead, omitted or concealed the basis of the charges.

87.     Defendants concealed or omitted reporting the true value and basis of the charge-back items.

88.     Defendants also failed to agree to and pay interest at least quarterly on the funds held in escrow by the carrier.

89.     Defendants also failed to provide the conditions that must be fulfilled in order to have the escrow fund returned to the drivers and retained escrow funds for lengthy periods following drivers' departures from service.

90.     Plaintiffs and Class Members were not aware of the true values and basis of the charge-back items and could not protect their interest in avoiding improper charges.

91.     Defendants did not specify in the Lease the true charge-back arrangement applied in practice through Defendants' concealment and omissions.

92.     Defendants are each liable for the acts and omissions of each other by virtue of their relationships of common control and ownership, among other things.

93.     Defendants acted to aid, abet, encourage, or require the violations of statute and regulations, concealment, and omissions of each other and/or through employees.

94.     Defendants are each liable for Plaintiffs' and Class Members' injuries by violating and continuing to violate 49 C.F.R. § 390.13, which states "No person shall aid, abet, encourage, or require a motor carrier or its employees to violate the rules of this chapter."

95.     As a direct and proximate result of Defendants' violation of statute and regulations, concealment, and omissions, Plaintiffs and Class members have sustained substantial damages and have been, and will continue to be, irreparably harmed.

96.     Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

97.     Defendants' violations, concealment, and omissions were performed wantonly, maliciously, oppressively, deliberately, with intent to defraud, and/or in reckless disregard of Plaintiffs' and Class members' rights. Defendants' conduct warrants an assessment of punitive damages in an amount adequate to deter such violations and misconduct in the future.

4922-1004-2900, v. 2

## COUNT IV
## Violation of 49 C.F.R. § 376.12(j) *et seq.*
## Insurance Costs

98.     Plaintiffs incorporate by reference every factual allegation and the allegations of paragraphs 1 through 55 of this Complaint as if fully restated here.

99.     This claim is brought on behalf of the Plaintiffs and the Class.

100.    It is required of Defendants, pursuant to 49 C.F.R. § 376.12(j), that the Lease state as to insurance coverage that "the lease shall specify the amount which will be charged-back to the lessor"; that "the authorized carrier will provide the lessor with a copy of each policy upon the request of the lessor"; that "the authorized carrier will provide the lessor with a certificate of insurance for each such policy"; that the certificate shall include "the cost to the lessor for each type of coverage, and the deductible amount for each type of coverage for which the lessor may be liable"; that the "lease shall clearly specify the conditions under which deductions for cargo or property damage may be made from the lessor's settlements."

101.    Defendants did not provide the insurance documents when requested by Plaintiffs and/or Class Members.

102.    Defendants failed to comply with these requirements and, instead, omitted or concealed the basis of insurance charges.

4922-1004-2900, v. 2

103.   Defendants failed to state the amounts of insurance to be deducted (49 C.F.R. § 376.12(j)), and instead stated the Carrier may "deduct the cost of such insurance." (Lease ¶ 8.)

104.   Defendants deducted amounts for insurance, including occupational accident deductions, without preliminary notice of or agreement to the amount to be deducted and without providing requisite copies of the policy, a certificate of the cost to the lessor, the deductible amount, and clear specification of the conditions of coverage.

105.   Defendants concealed or omitted reporting the true value and basis of the insurance charge-back items.

106.   Plaintiffs and Class Members were not aware of the true values and basis of the insurance charge-back items and could not protect their interest in avoiding improper charges.

107.   Defendants did not specify in the Lease the true charge-back arrangement applied in practice through Defendants' concealment and omissions.

108.   Defendants are each liable for the acts and omissions of each other by virtue of their relationships of common control and ownership, among other things.

109.   Defendants acted to aid, abet, encourage, or require the violations of statute and regulations, concealment, and omissions of each other and/or through employees.

110.   Defendants are each liable for Plaintiffs' and Class Members' injuries by violating and continuing to violate 49 C.F.R. § 390.13, which states "No person shall aid, abet, encourage, or require a motor carrier or its employees to violate the rules of this chapter."

111.   As a direct and proximate result of Defendants' violation of statute and regulations, concealment, and omissions, Plaintiffs and Class members have sustained substantial damages and have been, and will continue to be, irreparably harmed.

112.   Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

113.   Defendants' violations, concealment, and omissions were performed wantonly, maliciously, oppressively, deliberately, with intent to defraud, and/or in reckless disregard of Plaintiffs' and Class members' rights. Defendants' conduct warrants an assessment of punitive damages in an amount adequate to deter such violations and misconduct in the future.

**<u>COUNT V</u>**
**Violation of 49 C.F.R. § 376.12(k)** *et seq.*
**Escrow Funds**

114.   Plaintiffs incorporate by reference every factual allegation and the allegations of paragraphs 1 through 55 of this Complaint as if fully restated here.

115.   This claim is brought on behalf of the Plaintiffs and the Class.

31

116.   It is required of Defendants, pursuant to 49 C.F.R. § 376.12(k), that the Lease include provisions that, among other things:

    a.   identify "[t]he specific items to which the escrow fund can be applied" (49 C.F.R. § 376.12 (k)(2));

    b.   "provide an accounting" (49 C.F.R. § 376.12(k)(3));

    c.   notify the Plaintiffs and Class Members of "[t]he right of the lessor to demand to have an accounting for transactions involving the escrow fund at any time" (49 C.F.R. § 376.12 (k)(4));

    d.   notify the Plaintiffs and Class Members of, and to comply with the requirement that, "the carrier shall pay interest on the escrow fund on at least a quarterly basis" (49 C.F.R. § 376.12 (k)(5)); and

    e.   notify the Plaintiffs and Class Members of "[t]he conditions the lessor must fulfill in order to have the escrow fund returned." (49 C.F.R. § 376.12 (k)(6).)

117.   Defendants failed to comply with these requirements and have failed to return escrow funds improperly withheld or retained by Defendants.

118.   Defendants concealed or omitted reporting the true value and basis of the escrow items.

119.   Plaintiffs and Class Members were not aware of the true values and basis of the escrow items and could not protect their interest in avoiding improper charges.

120.   Defendants did not specify in the Lease the true escrow arrangement applied in practice through Defendants' concealment and omissions.

121.   Defendants are each liable for the acts and omissions of each other by virtue of their relationships of common control and ownership, among other things.

122.   Defendants acted to aid, abet, encourage, or require the violations of statute and regulations, concealment, and omissions of each other and/or through employees.

123.   Defendants are each liable for Plaintiffs' and Class Members' injuries by violating and continuing to violate 49 C.F.R. § 390.13, which states "No person shall aid, abet, encourage, or require a motor carrier or its employees to violate the rules of this chapter."

124.   As a direct and proximate result of Defendants' violation of statute and regulations, concealment, and omissions, Plaintiffs and Class members have sustained substantial damages and have been, and will continue to be, irreparably harmed.

125.   Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

126.   Defendants' violations, concealment, and omissions were performed wantonly, maliciously, oppressively, deliberately, with intent to defraud, and/or in reckless disregard of Plaintiffs' and Class members' rights. Defendants' conduct warrants an assessment of punitive damages in an amount adequate to deter such violations and misconduct in the future.

**COUNT VI**
**Violation of 49 C.F.R. § 376.12(c)(1) *et seq.***
**Exclusive Possession and Responsibilities**

127.   Plaintiffs incorporate by reference every factual allegation and the allegations of paragraphs 1 through 55 of this Complaint as if fully restated here.

128.   This claim is brought on behalf of the Plaintiffs and the Class.

129.   It is required of Defendants, pursuant to 49 C.F.R. § 376.12(c)(1), that the Lease include provisions that, among other things, provide that "the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease" and "shall assume complete responsibility for the operation of the equipment."

130.   Contrary to these requirements, Defendants' standard Lease states that "Carrier shall not have exclusive use and control of the equipment covered by this lease for the duration thereof." (Lease ¶ 19(A).)

131.   Also, Contrary to the above requirements, Defendants' standard Lease acknowledges that the carrier will obtain the "use and operation of equipment"

34

(Lease ¶ 4), but then states "Contractor shall be responsible" for the operation of the equipment, including cost of fuel, fuel taxes, empty mileage, tolls, ferries, base plates, licenses, registration, fuel permits, and loading or unloading of the equipment (Lease ¶ 19(B),(F)), while failing to state that the carrier assumes complete responsibility for the operation of the equipment.

132. Defendants failed to comply with these requirements of exclusive possession, control, and use of the equipment as well as complete responsibility.

133. Plaintiffs and Class Members were harmed by these violations and the attendant costs Plaintiffs and Class Members were required to bear.

134. Defendants are each liable for the acts and omissions of each other by virtue of their relationships of common control and ownership, among other things.

135. Defendants acted to aid, abet, encourage, or require the violations of statute and regulations, concealment, and omissions of each other and/or through employees.

136. Defendants are each liable for Plaintiffs' and Class Members' injuries by violating and continuing to violate 49 C.F.R. § 390.13, which states "No person shall aid, abet, encourage, or require a motor carrier or its employees to violate the rules of this chapter."

137. As a direct and proximate result of Defendants' violation of statute and regulations, concealment, and omissions, Plaintiffs and Class members have

sustained substantial damages and have been, and will continue to be, irreparably harmed.

138.   Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

139.   Defendants' violations, concealment, and omissions were performed wantonly, maliciously, oppressively, deliberately, with intent to defraud, and/or in reckless disregard of Plaintiffs' and Class members' rights. Defendants' conduct warrants an assessment of punitive damages in an amount adequate to deter such violations and misconduct in the future.

### COUNT VII
### Violation of 49 C.F.R. § 376.12(e) *et seq.*
### Responsibility for Loading and Unloading

140.   Plaintiffs incorporate by reference every factual allegation and the allegations of paragraphs 1 through 55 of this Complaint as if fully restated here.

141.   This claim is brought on behalf of the Plaintiffs and the Class.

142.   It is required of Defendants, pursuant to 49 C.F.R. § 376.12(e), that the Lease include provisions that, among other things, "clearly specify who is responsible for loading and unloading the property onto and from the motor vehicle, and the compensation, if any to be paid for this service." (49 C.F.R. § 376.12(e).)

143.   Contrary to this requirement, Defendants' standard Lease provides an incomplete sentence that fails to state the compensation to be paid for loading and

unloading: "that the compensation for any such loading or unloading service." (Lease ¶ 19(F).)

144.   Plaintiffs and Class Members were harmed by this violation and the attendant costs Plaintiffs and Class Members were required to bear without an agreed compensation.

145.   Defendants are each liable for the acts and omissions of each other by virtue of their relationships of common control and ownership, among other things.

146.   Defendants acted to aid, abet, encourage, or require the violations of statute and regulations, concealment, and omissions of each other and/or through employees.

147.   Defendants are each liable for Plaintiffs' and Class Members' injuries by violating and continuing to violate 49 C.F.R. § 390.13, which states "No person shall aid, abet, encourage, or require a motor carrier or its employees to violate the rules of this chapter."

148.   As a direct and proximate result of Defendants' violation of statute and regulations, concealment, and omissions, Plaintiffs and Class members have sustained substantial damages and have been, and will continue to be, irreparably harmed.

149.   Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

150.    Defendants' violations, concealment, and omissions were performed wantonly, maliciously, oppressively, deliberately, with intent to defraud, and/or in reckless disregard of Plaintiffs' and Class members' rights. Defendants' conduct warrants an assessment of punitive damages in an amount adequate to deter such violations and misconduct in the future.

**COUNT VIII**
**Violation of 49 C.F.R. § 376.12(e)** *et seq.*
**Responsibility for Cost of Fuel**

151.    Plaintiffs incorporate by reference every factual allegation and the allegations of paragraphs 1 through 55 of this Complaint as if fully restated here.

152.    This claim is brought on behalf of the Plaintiffs and the Class.

153.    It is required of Defendants, pursuant to 49 C.F.R. § 376.12(e), that the Lease include provisions that, among other things, "clearly specify the responsibility of each party with respect to the cost of fuel." (49 C.F.R. § 376.12(e).)

154.    The Lease expressly requires that Plaintiffs and Class Members are responsible for the fuel costs.

155.    However, contrary to the requirement of clearly specifying the responsibility of each party, Defendants' standard Lease does not state who will receive the fuel surcharge paid by customers, and Defendants retained some or all of these surcharges even though the Lease clearly puts the burden on the drivers/contractors to bear the cost of fuel. (Lease ¶ 19(B); 49 C.F.R. § 376.12(e).)

38

156.    Plaintiffs and Class Members were harmed by this violation and the attendant costs Plaintiffs and Class Members were required to bear without the corresponding fuel surcharge payments to offset the costs.

157.    Defendants are each liable for the acts and omissions of each other by virtue of their relationships of common control and ownership, among other things.

158.    Defendants acted to aid, abet, encourage, or require the violations of statute and regulations, concealment, and omissions of each other and/or through employees.

159.    Defendants are each liable for Plaintiffs' and Class Members' injuries by violating and continuing to violate 49 C.F.R. § 390.13, which states "No person shall aid, abet, encourage, or require a motor carrier or its employees to violate the rules of this chapter."

160.    As a direct and proximate result of Defendants' violation of statute and regulations, concealment, and omissions, Plaintiffs and Class members have sustained substantial damages and have been, and will continue to be, irreparably harmed.

161.    Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

162.    Defendants' violations, concealment, and omissions were performed wantonly, maliciously, oppressively, deliberately, with intent to defraud, and/or in

reckless disregard of Plaintiffs' and Class members' rights. Defendants' conduct warrants an assessment of punitive damages in an amount adequate to deter such violations and misconduct in the future.

**COUNT IX**
**Violation of 49 C.F.R. § 376.12(f) *et seq.***
**Timely Payment**

163.   Plaintiffs incorporate by reference every factual allegation and the allegations of paragraphs 1 through 55 of this Complaint as if fully restated here.

164.   This claim is brought on behalf of the Plaintiffs and the Class.

165.   It is required of Defendants, pursuant to 49 C.F.R. § 376.12(f), that the Lease include provisions that, among other things, state that "payment to the lessor shall be made within 15 days after submission of the necessary delivery documents concerning a trip in the service of the authorized carrier." (49 C.F.R. § 376.12(f).)

166.   Contrary to this requirement, Defendants' standard Lease contradicts the regulation by stating that "Payments by the Carrier to Contractor for the use and operation of equipment shall be made within twenty-one (21) days" after submission of various documentation beyond what is permitted in the regulation, such as bills of lading to which no objection has been made, and Defendants actually delayed payments beyond the 15-day requirement. (Lease ¶¶ 4, 19(E).)

40

167.   Plaintiffs and Class Members were harmed by this violation and the substantial delays and improper requirements Plaintiffs and Class Members were required to bear to obtain compensation.

168.   Defendants are each liable for the acts and omissions of each other by virtue of their relationships of common control and ownership, among other things.

169.   Defendants acted to aid, abet, encourage, or require the violations of statute and regulations, concealment, and omissions of each other and/or through employees.

170.   Defendants are each liable for Plaintiffs' and Class Members' injuries by violating and continuing to violate 49 C.F.R. § 390.13, which states "No person shall aid, abet, encourage, or require a motor carrier or its employees to violate the rules of this chapter."

171.   As a direct and proximate result of Defendants' violation of statute and regulations, concealment, and omissions, Plaintiffs and Class members have sustained substantial damages and have been, and will continue to be, irreparably harmed.

172.   Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

173.   Defendants' violations, concealment, and omissions were performed wantonly, maliciously, oppressively, deliberately, with intent to defraud, and/or in

41

reckless disregard of Plaintiffs' and Class members' rights. Defendants' conduct warrants an assessment of punitive damages in an amount adequate to deter such violations and misconduct in the future.

## COUNT X
## BREACH OF CONTRACT
### Michigan Law

174.   Plaintiffs incorporate by reference every factual allegation and the allegations of paragraphs 1 through 55 of this Complaint as if fully restated here.

175.   This claim is brought on behalf of the Plaintiffs and the Class.

176.   Defendants' violations of statute and regulations, misrepresentations, concealment, and omissions alleged herein, including improperly identifying, reducing, and/or communicating values of loads hauled and improperly withholding or retaining payments, escrow, and other funds, caused Plaintiff and the other Class Members to lose substantial value owed to them under the terms of the Leases. Absent Defendants' violations of statute and regulations, misrepresentations, concealment, and omissions contrary to the terms of the Leases, Plaintiffs and the other Class Members would not have accepted reduced compensation, would not have permitted Defendants' improper withholding or retention of funds, and/or would not have entered into the Leases with Defendants. Accordingly, Plaintiff and the other Class Members did not receive the benefit of their bargain.

177.   Defendants breached the Leases by violations of statute and regulations, misrepresentations, concealment, and omissions alleged herein, including improperly identifying, reducing, and/or communicating values of loads hauled and improperly withholding or retaining payments, escrow, and other funds, all contrary to the Leases.

178.   As a direct and proximate result of Defendants' breaches of contract, Plaintiffs and Class Members have sustained damage in an amount to be proven at trial, which shall include, but is not limited to, improperly withheld or retained payments, escrow, and other funds, as well as all other compensatory damages, incidental, and consequential damages, and other damages allowed by law.

## COUNT XI
### Fraudulent Concealment
### Michigan Law

179.   Plaintiffs incorporate by reference every factual allegation and the allegations of paragraphs 1 through 55 of this Complaint as if fully restated here.

180.   This claim is brought on behalf of the Plaintiffs and the Class.

181.   MCL § 600.5855 states:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

182.    Defendants intentionally and/or wrongfully concealed, omitted, deleted, modified, or failed to disclose material facts to Plaintiffs and Class Members, including but not limited to the following:

   a.  The true value of the shipments upon which the percentage compensation was owed to Plaintiffs and the other Class Members;

   b.  The actual freight charges;

   c.  The basis of the escrow charges;

   d.  The true value and basis of the insurance charge-back items and the amounts of insurance to be deducted;

   e.  The specific items to which the escrow fund can be applied;

   f.  The right of the lessor to demand to have an accounting for transactions involving the escrow fund at any time;

   g.  The amount of interest the carrier was required to pay on the escrow fund on at least a quarterly basis;

   h.  The conditions the lessor must fulfill in order to have the escrow fund returned;

   i.  The requirements of the carrier lessee's exclusive possession, control, and use of the equipment as well as complete responsibility therefor;

   j.  The compensation to be paid for loading and unloading;

k. The permissible time frame and permissible prerequisites for payment;

l. That Defendants and/or their agents instructed Defendants' employees not to disclose the true information to Plaintiffs and the other Class Members and/or took affirmative steps to prevent Plaintiffs and the other Class Members from discovering the true information; and

m. That Defendants and/or their agents sent to one or more Plaintiffs, images of VTI computer screens showing the false value reported to the drivers but covering up the portion of the screen showing the full value of the rate actually paid.

183.   Plaintiffs and Class Members exercised due diligence but were unaware of these facts that Defendants misrepresented, concealed, or omitted.

184.   When Defendants concealed or omitted reporting these material facts to Plaintiffs and Class Members, they did so with the intent to deceive, defraud, and/or induce Plaintiffs and Class Members to act in reliance upon the representations Defendants had made to Plaintiffs and/or to induce Plaintiffs to refrain from investigating further.

185.   Had Defendants disclosed the omitted facts, Plaintiffs and the Class Members would have acted differently, including pursuing recovery of improperly

4922-1004-2900, v. 2

withheld or retained compensation, escrow funds, interest, and/or other information concealed or omitted.

186.   Defendants are each liable for the acts and omissions of each other by virtue of their relationships of common control and ownership, among other things.

187.   Defendants acted to aid, abet, encourage, or require the violations of statute and regulations, concealment, and omissions of each other and/or through employees.

188.   As a direct and proximate result of Defendants' violation of statute and regulations, concealment, and omissions, Plaintiffs and Class members have sustained substantial damages and have been, and will continue to be, irreparably harmed.

189.   Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

190.   Defendants' concealment and omissions were a substantial factor in causing Plaintiffs' and Class Members' harm.

191.   But for Defendants' concealment and omissions, Plaintiffs and Class Members would have pursued recovery of improperly withheld or retained compensation, escrow funds, and/or interest.

192.   Defendants' violations, concealment, and omissions were performed wantonly, maliciously, oppressively, deliberately, with intent to defraud, and/or in

46

reckless disregard of Plaintiffs' and Class members' rights. Defendants' conduct warrants an assessment of punitive damages in an amount adequate to deter such violations and misconduct in the future.

## COUNT XII
### Fraudulent Concealment
### Federal Law

193.   Plaintiffs incorporate by reference every factual allegation and the allegations of paragraphs 1 through 55 of this Complaint as if fully restated here.

194.   This claim is brought on behalf of the Plaintiffs and the Class.

195.   Federal common law tolls the statute of limitations for fraudulent concealment.

196.   Defendants wrongfully concealed their actions and made it difficult for Plaintiffs and Class Members to discover the operative facts that are the basis of this cause of action despite plaintiff's due diligence.

197.   Defendants intentionally and/or wrongfully concealed or failed to disclose material facts to Plaintiffs and Class Members, including but not limited to the following:

   a.   The true value of the shipments upon which the percentage compensation was owed to Plaintiffs and the other Class Members;

   b.   The actual freight charges;

   c.   The basis of the escrow charges;

47

d.  The true value and basis of the insurance charge-back items and the amounts of insurance to be deducted;

e.  The specific items to which the escrow fund can be applied;

f.  The right of the lessor to demand to have an accounting for transactions involving the escrow fund at any time;

g.  The amount of interest the carrier was required to pay on the escrow fund on at least a quarterly basis;

h.  The conditions the lessor must fulfill in order to have the escrow fund returned;

i.  The requirements of the carrier lessee's exclusive possession, control, and use of the equipment as well as complete responsibility therefor;

j.  The compensation to be paid for loading and unloading;

k.  The permissible time frame and permissible prerequisites for payment;

l.  That Defendants and/or their agents instructed Defendants' employees not to disclose the true information to Plaintiffs and the other Class Members and/or took affirmative steps to prevent Plaintiffs and the other Class Members from discovering the true information; and

m. That Defendants and/or their agents sent to one or more Plaintiffs, images of VTI computer screens showing the false value reported to the drivers but covering up the portion of the screen showing the full value of the rate actually paid.

198.   Plaintiffs and Class Members exercised due diligence but were unaware of these facts that Defendants misrepresented, concealed, or omitted.

199.   When Defendants concealed or omitted reporting these material facts to Plaintiffs and Class Members, they did so with the intent to deceive, defraud, and/or induce Plaintiffs and Class Members to act in reliance upon the representations Defendants had made to Plaintiffs and/or to induce Plaintiffs to refrain from investigating further.

200.   Had Defendants disclosed the omitted facts, Plaintiffs and the Class Members would have acted differently, including pursuing recovery of improperly withheld or retained compensation, escrow funds, interest, and/or other information concealed or omitted.

201.   Defendants are each liable for the acts and omissions of each other by virtue of their relationships of common control and ownership, among other things.

202.   Defendants acted to aid, abet, encourage, or require the violations of statute and regulations, concealment, and omissions of each other and/or through employees.

203.   As a direct and proximate result of Defendants' violation of statute and regulations, concealment, and omissions, Plaintiffs and Class members have sustained substantial damages and have been, and will continue to be, irreparably harmed.

204.   Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

205.   Defendants' concealment and omissions were a substantial factor in causing Plaintiffs' and Class Members' harm.

206.   But for Defendants' concealment and omissions, Plaintiffs and Class Members would have pursued recovery of improperly withheld or retained compensation, escrow funds, and/or interest.

207.   Defendants' violations, concealment, and omissions were performed wantonly, maliciously, oppressively, deliberately, with intent to defraud, and/or in reckless disregard of Plaintiffs' and Class members' rights. Defendants' conduct warrants an assessment of punitive damages in an amount adequate to deter such violations and misconduct in the future.

## COUNT XIII
### Silent Fraud
### Michigan Law

208.   Plaintiffs incorporate by reference every factual allegation and the allegations of paragraphs 1 through 55 of this Complaint as if fully restated here.

209.  This claim is brought on behalf of the Plaintiffs and the Class.

210.  Defendants wrongfully concealed their actions and made it difficult for Plaintiffs and Class Members to discover the operative facts that are the basis of this cause of action despite plaintiff's due diligence.

211.  Defendants intentionally concealed and suppressed material facts concerning the true facts related to the shipment values and withheld funds, among other things, in order to defraud Plaintiffs and Class members.

212.  Defendants intentionally and/or wrongfully concealed or failed to disclose material facts to Plaintiffs and Class Members, including but not limited to the following:

    a.  The true value of the shipments upon which the percentage compensation was owed to Plaintiffs and the other Class Members;

    b.  The actual freight charges;

    c.  The basis of the escrow charges;

    d.  The true value and basis of the insurance charge-back items and the amounts of insurance to be deducted;

    e.  The specific items to which the escrow fund can be applied;

    f.  The right of the lessor to demand to have an accounting for transactions involving the escrow fund at any time;

g.  The amount of interest the carrier was required to pay on the escrow fund on at least a quarterly basis;

h.  The conditions the lessor must fulfill in order to have the escrow fund returned;

i.  The requirements of the carrier lessee's exclusive possession, control, and use of the equipment as well as complete responsibility therefor;

j.  The compensation to be paid for loading and unloading;

k.  The permissible time frame and permissible prerequisites for payment;

l.  That Defendants and/or their agents instructed Defendants' employees not to disclose the true information to Plaintiffs and the other Class Members and/or took affirmative steps to prevent Plaintiffs and the other Class Members from discovering the true information; and

m. That Defendants and/or their agents sent to one or more Plaintiffs, images of VTI computer screens showing the false value reported to the drivers but covering up the portion of the screen showing the full value of the rate actually paid.

4922-1004-2900, v. 2

213. Plaintiffs and Class Members exercised due diligence but were unaware of these facts that Defendants misrepresented, concealed, or omitted.

214. Defendants were aware of the concealed and/or undisclosed facts, and Defendants were aware that the representations regarding the shipment values and withheld funds, were not correct.

215. When Defendants concealed or omitted reporting these material facts to Plaintiffs and Class Members, they did so with the intent to deceive, defraud, and/or induce Plaintiffs and Class Members to act in reliance upon the representations Defendants had made to Plaintiffs and/or to induce Plaintiffs to refrain from investigating further.

216. Had Defendants disclosed the omitted facts, Plaintiffs and the Class Members would have acted differently, including pursuing recovery of improperly withheld or retained compensation, escrow funds, interest, and/or other information concealed or omitted.

217. Plaintiffs and Class members reasonably relied upon Defendants' representations regarding the value of the shipments, actual freight charges, and the other issues identified above about which Defendants concealed or omitted full information.

4922-1004-2900, v. 2

218.   Plaintiffs and Class members reasonably relied upon the information provided by Defendants, including material misrepresentations and the lack of corrective information suppressed by Defendants, and therefore suffered damages.

219.   Defendant's false representations, omissions, and/or concealment were material to Plaintiffs and Class members because the information affected significant loss of compensation, delay in receipt of compensation or assets, and loss of statutory and regulatory protections, among other things.

220.   Pursuant to the statutes and regulations previously cited and/or because of its incorrect affirmative representations, Defendants had a duty to disclose the misrepresented, concealed, and/or omitted information to Plaintiffs and the Class members.

221.   Defendants actively concealed and/or suppressed the identified material facts, in whole or in part, to benefit themselves through increased profits, among other things, at the expense of Plaintiffs and Class members.

222.   As a direct and proximate result of Defendants' concealment and/or suppression of facts, Plaintiffs and Class members have sustained harm, including significant loss of compensation, delay in receipt of compensation or assets, and loss of statutory and regulatory protections, among other things.

223.   Defendants are each liable for the acts and omissions of each other by virtue of their relationships of common control and ownership, among other things.

224.   Defendants acted to aid, abet, encourage, or require the violations of statute and regulations, concealment, and omissions of each other and/or through employees.

225.   As a direct and proximate result of Defendants' violation of statute and regulations, concealment, and omissions, Plaintiffs and Class members have sustained substantial damages and have been, and will continue to be, irreparably harmed.

226.   Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

227.   Defendants' concealment and omissions were a substantial factor in causing Plaintiffs' and Class Members' harm.

228.   But for Defendants' concealment and omissions, Plaintiffs and Class Members would have pursued recovery of improperly withheld or retained compensation, escrow funds, and/or interest.

229.   Defendants' violations, misrepresentations, concealment, and omissions were performed wantonly, maliciously, oppressively, deliberately, with intent to defraud, and/or in reckless disregard of Plaintiffs' and Class members' rights. Defendants' conduct warrants an assessment of punitive damages in an amount adequate to deter such violations and misconduct in the future.

## COUNT XIV
**Fraudulent Misrepresentation**
**Michigan Law**

230.  Plaintiffs incorporate by reference every factual allegation and the allegations of paragraphs 1 through 55 of this Complaint as if fully restated here.

231.  This claim is brought on behalf of the Plaintiffs and the Class.

232.  Defendants intentionally and/or wrongfully made material misrepresentations and misleading representations to Plaintiffs and the Class members as identified throughout this Complaint, including but not limited to the following:

    a.  The true value of the shipments upon which the percentage compensation was owed to Plaintiffs and the other Class Members;

    b.  The actual freight charges;

    c.  The basis of the escrow charges;

    d.  The true value and basis of the insurance charge-back items and the amounts of insurance to be deducted;

    e.  The specific items to which the escrow fund can be applied;

    f.  The right of the lessor to demand to have an accounting for transactions involving the escrow fund at any time;

    g.  The amount of interest the carrier was required to pay on the escrow fund on at least a quarterly basis;

h.  The conditions the lessor must fulfill in order to have the escrow fund returned;

i.  The requirements of the carrier lessee's exclusive possession, control, and use of the equipment as well as complete responsibility therefor;

j.  The compensation to be paid for loading and unloading;

k.  The permissible time frame and permissible prerequisites for payment;

l.  That Defendants and/or their agents instructed Defendants' employees not to disclose the true information to Plaintiffs and the other Class Members and/or took affirmative steps to prevent Plaintiffs and the other Class Members from discovering the true information; and

m.  That Defendants and/or their agents sent to one or more Plaintiffs, images of VTI computer screens showing the false value reported to the drivers but covering up the portion of the screen showing the full value of the rate actually paid.

233.  Plaintiffs and Class Members exercised due diligence but were unaware of these facts that Defendants misrepresented, concealed, or omitted.

234.   Defendants made these material misrepresentations knowing that the representations were false, or made the representations recklessly, without knowledge of the truth and as a positive assertion, particularly in light of Defendants' receipt of and/or access to the true information.

235.   Defendants made these material misrepresentations of facts to Plaintiffs and Class Members with the intent to deceive, defraud, and/or induce Plaintiffs and Class Members to act in reliance upon the representations Defendants had made to Plaintiffs and/or to induce Plaintiffs to refrain from investigating further.

236.   Had Defendants disclosed the omitted facts, Plaintiffs and the Class Members would have acted differently, including pursuing recovery of improperly withheld or retained compensation, escrow funds, interest, and/or other information concealed or omitted.

237.   Plaintiffs and Class members reasonably relied upon Defendants' representations regarding the value of the shipments, actual freight charges, and the other issues identified above about which Defendants concealed or omitted full information.

238.   Plaintiffs and Class members reasonably relied upon the information provided by Defendants, including material misrepresentations and the lack of corrective information suppressed by Defendants, and therefore suffered damages.

239.   Defendant's false representations, omissions, and/or concealment were material to Plaintiffs and Class members because the information affected significant loss of compensation, delay in receipt of compensation or assets, and loss of statutory and regulatory protections, among other things.

240.   Defendants misrepresented material facts, in whole or in part, to benefit themselves through increased profits, among other things, at the expense of Plaintiffs and Class members.

241.   As a direct and proximate result of Defendants' material misrepresentation of facts, Plaintiffs and Class members have sustained harm, including significant loss of compensation, delay in receipt of compensation or assets, and loss of statutory and regulatory protections, among other things.

242.   Defendants are each liable for the acts and omissions of each other by virtue of their relationships of common control and ownership, among other things.

243.   Defendants acted to aid, abet, encourage, or require the violations of statute and regulations, misrepresentations, concealment, and omissions of each other and/or through employees.

244.   As a direct and proximate result of Defendants' violation of statute and regulations, misrepresentations, concealment, and omissions, Plaintiffs and Class members have sustained substantial damages and have been, and will continue to be, irreparably harmed.

245.   Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

246.   Defendants' misrepresentations, concealment, and omissions were a substantial factor in causing Plaintiffs' and Class Members' harm.

247.   But for Defendants' misrepresentations, concealment, and omissions, Plaintiffs and Class Members would have pursued recovery of improperly withheld or retained compensation, escrow funds, and/or interest.

248.   Defendants' violations, misrepresentations, concealment, and omissions were performed wantonly, maliciously, oppressively, deliberately, with intent to defraud, and/or in reckless disregard of Plaintiffs' and Class members' rights. Defendants' conduct warrants an assessment of punitive damages in an amount adequate to deter such violations and misconduct in the future.

## COUNT XV
### Innocent Misrepresentation
### Michigan Law

249.   Plaintiffs incorporate by reference every factual allegation and the allegations of paragraphs 1 through 55 of this Complaint as if fully restated here.

250.   This claim is brought on behalf of the Plaintiffs and the Class.

251.   Defendants intentionally and/or wrongfully made material misrepresentations and misleading representations to Plaintiffs and the Class

members as identified throughout this Complaint, including but not limited to the following:

a. The true value of the shipments upon which the percentage compensation was owed to Plaintiffs and the other Class Members;

b. The actual freight charges;

c. The basis of the escrow charges;

d. The true value and basis of the insurance charge-back items and the amounts of insurance to be deducted;

e. The specific items to which the escrow fund can be applied;

f. The right of the lessor to demand to have an accounting for transactions involving the escrow fund at any time;

g. The amount of interest the carrier was required to pay on the escrow fund on at least a quarterly basis;

h. The conditions the lessor must fulfill in order to have the escrow fund returned;

i. The requirements of the carrier lessee's exclusive possession, control, and use of the equipment as well as complete responsibility therefor;

j. The compensation to be paid for loading and unloading;

k. The permissible time frame and permissible prerequisites for payment;

l. That Defendants and/or their agents instructed Defendants' employees not to disclose the true information to Plaintiffs and the other Class Members and/or took affirmative steps to prevent Plaintiffs and the other Class Members from discovering the true information; and

m. That Defendants and/or their agents sent to one or more Plaintiffs, images of VTI computer screens showing the false value reported to the drivers but covering up the portion of the screen showing the full value of the rate actually paid.

252.   Regardless of whether Defendants made these material misrepresentations knowing that the representations were false, or made the representations recklessly, without knowledge of the truth and as a positive assertion, and regardless of any fraudulent purpose or intent, the false representations inured to the benefit of Defendants in that, among other things, Plaintiffs and Class members refrained from action to protect their rights or recover their compensation, and Defendants benefited by increased profits at the expense of Plaintiffs and Class members.

253. Regardless of whether Defendants made these material misrepresentations knowing that the representations were false, or made the representations recklessly, without knowledge of the truth and as a positive assertion, and regardless of any fraudulent purpose or intent, Plaintiffs and Class members detrimentally relied upon the representations and, among other things, refrained from action to protect their rights or recover their compensation.

254. Plaintiffs and Class Members exercised due diligence but were unaware of these facts that Defendants misrepresented, concealed, or omitted.

255. Had Defendants disclosed the omitted facts, Plaintiffs and the Class Members would have acted differently, including pursuing recovery of improperly withheld or retained compensation, escrow funds, interest, and/or other information concealed or omitted.

256. Plaintiffs and Class members reasonably relied upon Defendants' representations regarding the value of the shipments, actual freight charges, and the other issues identified above about which Defendants concealed or omitted full information.

257. Plaintiffs and Class members reasonably relied upon the information provided by Defendants, including material misrepresentations and the lack of corrective information suppressed by Defendants, and therefore suffered damages.

258.   Defendant's false representations, omissions, and/or concealment were material to Plaintiffs and Class members because the information affected significant loss of compensation, delay in receipt of compensation or assets, and loss of statutory and regulatory protections, among other things.

259.   Defendants misrepresented material facts, in whole or in part, to benefit themselves through increased profits, among other things, at the expense of Plaintiffs and Class members.

260.   As a direct and proximate result of Defendants' material misrepresentation of facts, Plaintiffs and Class members have sustained harm, including significant loss of compensation, delay in receipt of compensation or assets, and loss of statutory and regulatory protections, among other things.

261.   Defendants are each liable for the acts and omissions of each other by virtue of their relationships of common control and ownership, among other things.

262.   Defendants acted to aid, abet, encourage, or require the violations of statute and regulations, misrepresentations, concealment, and omissions of each other and/or through employees.

263.   As a direct and proximate result of Defendants' violation of statute and regulations, misrepresentations, concealment, and omissions, Plaintiffs and Class members have sustained substantial damages and have been, and will continue to be, irreparably harmed.

264.   Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

265.   Defendants' misrepresentations, concealment, and omissions were a substantial factor in causing Plaintiffs' and Class Members' harm.

266.   But for Defendants' misrepresentations, concealment, and omissions, Plaintiffs and Class Members would have pursued recovery of improperly withheld or retained compensation, escrow funds, and/or interest.

267.   Defendants' violations, misrepresentations, concealment, and omissions were performed wantonly, maliciously, oppressively, deliberately, with intent to defraud, and/or in reckless disregard of Plaintiffs' and Class members' rights. Defendants' conduct warrants an assessment of punitive damages in an amount adequate to deter such violations and misconduct in the future.

## COUNT XVI
### Unjust Enrichment
### Michigan Law

268.   Plaintiffs incorporate by reference every factual allegation and the allegations of paragraphs 1 through 55 of this Complaint as if fully restated here.

269.   This claim is brought on behalf of the Plaintiffs and the Class.

270.   Plaintiffs and the Class members conferred a benefit on Defendants in that, among other things, Plaintiffs and Class members refrained from action to

protect their rights or recover their compensation, and Defendants benefited by increased profits at the expense of Plaintiffs and Class members.

271.    In order to obtain these benefits, Defendants engaged in violations of statute and regulations, misrepresentations, concealment, and omissions affecting Plaintiffs and the Class members as identified throughout this Complaint, including but not limited to misrepresenting or concealing the following:

    a. The true value of the shipments upon which the percentage compensation was owed to Plaintiffs and the other Class Members;

    b. The actual freight charges;

    c. The basis of the escrow charges;

    d. The true value and basis of the insurance charge-back items and the amounts of insurance to be deducted;

    e. The specific items to which the escrow fund can be applied;

    f. The right of the lessor to demand to have an accounting for transactions involving the escrow fund at any time;

    g. The amount of interest the carrier was required to pay on the escrow fund on at least a quarterly basis;

    h. The conditions the lessor must fulfill in order to have the escrow fund returned;

66

i.   The requirements of the carrier lessee's exclusive possession, control, and use of the equipment as well as complete responsibility therefor;

j.   The compensation to be paid for loading and unloading;

k.   The permissible time frame and permissible prerequisites for payment;

l.   That Defendants and/or their agents instructed Defendants' employees not to disclose the true information to Plaintiffs and the other Class Members and/or took affirmative steps to prevent Plaintiffs and the other Class Members from discovering the true information; and

m.  That Defendants and/or their agents sent to one or more Plaintiffs, images of VTI computer screens showing the false value reported to the drivers but covering up the portion of the screen showing the full value of the rate actually paid.

272.   Defendants retained the benefits of their violations, misrepresentations, concealment, and omissions, including, among other things, the increased profits at the expense of Plaintiffs and Class members.

273.   Defendants were and continue to be unjustly enriched at the expense of Plaintiffs and Class members.

274.   Plaintiffs and Class Members exercised due diligence but were unaware of these facts that Defendants misrepresented, concealed, or omitted.

275.   Had Defendants disclosed the omitted facts, Plaintiffs and the Class Members would have acted differently, including pursuing recovery of improperly withheld or retained compensation, escrow funds, interest, and/or other information concealed or omitted.

276.   Defendants were and continue to be unjustly enriched at the expense of Plaintiffs and Class members.

277.   Defendants are each liable for the acts and omissions of each other by virtue of their relationships of common control and ownership, among other things.

278.   Defendants acted to aid, abet, encourage, or require the violations of statute and regulations, misrepresentations, concealment, and omissions of each other and/or through employees.

279.   As a direct and proximate result of Defendants' violation of statute and regulations, misrepresentations, concealment, and omissions, Plaintiffs and Class members have sustained substantial damages and have been, and will continue to be, irreparably harmed.

280.   Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

281.   Defendants' misrepresentations, concealment, and omissions were a substantial factor in causing Plaintiffs' and Class Members' harm.

282.   But for Defendants' misrepresentations, concealment, and omissions, Plaintiffs and Class Members would have pursued recovery of improperly withheld or retained compensation, escrow funds, and/or interest.

283.   Defendants' violations, misrepresentations, concealment, and omissions were performed wantonly, maliciously, oppressively, deliberately, with intent to defraud, and/or in reckless disregard of Plaintiffs' and Class members' rights. Defendants' conduct warrants an assessment of punitive damages in an amount adequate to deter such violations and misconduct in the future.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class Members, respectfully requests that this honorable Court enter judgment and grant the following relief in their favor and against Defendants:

a.   Certification of the proposed Class, including appointment of Plaintiffs' counsel as Class Counsel;

b.   An order temporarily and permanently enjoining Defendants from continuing the unlawful practices alleged in this Complaint;

c.   An order of injunctive relief identifying each type of misconduct committed by Defendants and ordering Defendants to refrain from any further such conduct;

d.   An award of costs, restitution, damages, including punitive damages, and disgorgement in an amount to be determined at trial;

e.   An order that Defendant must pay pre- and post-judgment interest on any amounts awarded;

f.   An award of costs and attorneys' fees; and

g.   Such other or further relief as may be appropriate, including all of the other statutory remedies and common law remedies set forth elsewhere in this Complaint.

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff hereby demands a trial by jury of any counts that may be tried before a jury.

Respectfully Submitted,

HERTZ SCHRAM PC

 */s/ Daniel W. Rucker*

By:  Steve J. Weiss (P32174)
      Daniel W. Rucker (P67832)
Attorneys for Plaintiff
1760 S. Telegraph Road, Suite 300
Bloomfield Hills, MI  48302
(248) 335-5000

Date: January 29, 2025

# EXHIBIT 1

Velic Transportation Inc.
35375 Groesbeck Hwy.
Clinton Township, MI 48035

MC- 551229
US DOT- 1459126

## **Contractor Operator Agreement**

This agreement made this **2nd** day of  **December 2019** between **Velic Transportation Inc**, here in after referred to as "Carrier" and **Hasic LLC** here in after referred to as "Contractor" do hereby enter into and agree to be bound by this agreement as set forth in full in the paragraphs which follow.

WHERAS, the Carrier, an interstate for hire Common Carrier, operating under a Certificate of Public Convenience and Necessity issued by the Interstate Commerce Commission, and a Common Carrier of commodities as authorized by the regulatory bodies of the Interstate Commerce Commission, and an authorized carrier of various state agricultural commissions, Carrier wishes to obtain transportation with equipment it does not own through and agreement with the Contractor; and,

WHERAS, Contractor is the owner of certain motor vehicle equipment, which is particularly described in Exhibit "A"; hereto as in engaged in the business of hauling commodities by motor vehicle pursuant to contracts and agreements; and

WHERAS, Carrier desires to enter into agreement with Contractor for hauling of certain commodities which are within its certified authority as well as exempt items and contractor desires to enter into agreement with Carrier for the hauling of such commodities with the motor vehicle described in Exhibit "A"; and

WHERAS, Carrier and Contractors deem it essential to their respective interests to establish and maintain and Independent Contractor relationship in the execution and performance of this agreement;

NOW, THEREFORE, in consideration of the following promises and of the mutual promises herein contained, the Carrier and Contractor agree as follows;

1. The Contractor agrees to use the equipment specifically described in Exhibit "A" and by reference made a part hereto (the "equipment") together with drivers   and all other necessary labor, to transport, load, and unload on behalf of the Carrier, and for other parties authorized by the Carrier, such commodities as the Carrier might from time to time make available to the Contractor. Contractor warrants the equipment is in good, safe and efficient condition and guarantees title thereto.  The Carrier agrees to make commodities available from time to time for transportation by the Contractor and the Carrier shall exercise every reasonable effort to make sufficient commodities available so that the Contractor shall be able to keep the agreement, although this shall not be construed as an agreement by the Carrier to furnish any specific number of load or pounds of freight for transportation by the Contractor at any particular place. All monies due to the Contractor for services performed to outside parties shall be due to and made payable to the Carrier for the entire period of the lease.

2. Contractor shall furnish and pay a competent, reliable and physically fit operator or driver, together with any necessary helpers to operate equipment as part of the consideration hereof.
Contractor represents: that the driver or operator furnished for said equipment is familiar with and will obey all applicable state and federal laws and regulations; That the furnishing of said operator or driver will not result in a violation of any said laws or regulations; that driver or operator will cooperate with Carrier in achieving compliance with said laws and regulations and will promptly file with carrier all log sheets, physical examination certificates, accident reports and other reports, documents and data required by law or by Carrier and that Contractor will comply with all state weight, length and height laws and will not accept loads in excess of the limits allowed by the state through which equipment must travel.

3. Contractor shall, when requested by the Carrier, haul such commodities as may be provided by the Carrier from time to time as are lawful under its authority from the Interstate Commerce Commissions, and under its exempt commodities authority and any authority granted the Carrier by various state public services commissions, in hauling such commodities for the Carrier, The Contractor shall utilize only the equipment which is more particularly described in Exhibit "A". Contractor shall haul such commodities in accordance with applicable laws and governmental regulations, tariffs and bills of lading and without damage to the commodities being hauled, if the Contractor shall decline to haul any particular commodity provided by the Carrier it shall not be a breach of the agreement.

4. Carrier agrees to pay Contractor on a percentage basis, per Exhibit "B" for the use and operation of equipment listed in Exhibit "A". Payments by the Carrier to Contractor for the use and operation of equipment shall be made within twenty-one (21) days after submission by Contractor to Carrier of the following items : (1) Bills of Ladings or Shipping Orders, (2) Delivery Receipts, (3) Log Sheets, (4) any Toll or Labor receipts which are involved in Carrier Tariff charges, and if contractor's compensation under this agreement is based on a percentage of the gross revenue listed in Exhibit "B" for the shipments transported on the equipment, Carrier shall give to Contractor at the time of settlement a copy of the rated freight bill (subject to Carrier's right to delete information of Shippers and Consignees) at the time of settlement, Contractor shall have the right to examine copies of Carrier's tariff. In the event that the Carrier incorrectly bills the Shipper on a freight charge, The Carrier shall have the right to make any necessary adjustments to correct the error, including a deduction from the Contractor if they have been paid, or a reduction in the amount stated on any documentation, which might have been given to the Contractor. In all instances Contractor shall receive a copy of the correct freight bill as presented to the shipper. The Carrier shall have a maximum period of twenty-one (21) days after termination of this agreement in which to make final settlement with the Contractor.

5. The Contractor recognizes that Carriers business of providing motor carrier transportation services to the public is subject to regulation by the Federal Government acting through the Interstate Commerce Commission and the Department of Transportation and by various state and local governmental agencies. Accordingly, the equipment of contractors shall be subject to the control of the Safety department of the Carrier. However, the Contractor shall have the responsibility to the Carrier of satisfying these regulatory requirements, subject at all time to verification by the carrier by:

A. Maintaining the equipment in the state of repair required by all applicable regulation.

B. Operating the Equipment in accord with all applicable regulations.

C. Hiring to operate the equipment only those drivers who are qualified under all applicable regulation.

D. Furnishing the Carrier the equipment that the Carrier may require to fulfill requirements; and

E. Doing all other things necessary to conduct the Transportation services provided in the agreement in accord with all applicable regulations, including driver's physicals, daily logs, vehicle condition reports, trip lease documents involving other carrier, among others.

F. Only allowing persons authorized by the carrier to act as drivers or passengers in the leased vehicle.

6. The Contractor shall determine the means and methods of the performance of all transportation services undertaken by the Contractor under the Terms of this agreement. The Contractor has and shall retain all responsibility for:

A. Hiring, setting the wages, hours and working conditions and paying wages and benefits and adjusting grievances of, supervising, training, disciplining, and firing of drivers and other workers, necessary for the performance of the Contractor's obligation. Under the terms of this agreement, drivers and together workers are and shall remain the employees of contractors.

B. Obtaining, selecting, purchasing, financing, and maintaining the equipment; and

C. Paying all operating and maintenance expenses incidental to the performance of this agreement, including expenses of fuel oil, and repairs to equipment, lubricants, tires, including changing and repair, public liability, property damage insurance of the equipment while not being operated in the service of the carrier and road taxes, mileage ton taxes, fuel taxes, fines for parking, moving or weight violations, licenses, revenue taxes, third structure taxes, ferries and tolls and;

Subject in each case only to any regulatory requirements, which may be placed on the carrier by various governmental agencies and on the Contractor by paragraph 5 of this agreement.

The recording and paying to the respective states of the fuel taxes incurred by the Contractor and the fuel permits required to operate in these states, New Mexico vehicle registration plate and cab card, and Michigan fuel decal shall all be obtained by the carrier and charged back to the contractor and deducted from the Contractor's account. In the event that the Contractor does not fulfill this lease by continuing the working relationship with the Carrier for a period of one (1) year, the Carrier shall be permitted to charge back to the contractor the labor cost involved in obtaining and assigning these permits and of recording and reporting these fuel taxes.

In the event the Carrier is called upon to pay any of Contractor's cost of operation, such payments shall be considered as an advance to the Contractor, and Carrier is hereby authorized to

reimburse itself out of any monies due to Contractor.

   7. In the event that the Carrier extends credit to the contractor in the Carrier's name, or furnishes diesel fuel oil, anti-freeze, tires, filter or any service from the Carrier's garage or service facilities, or any other services, Contractor is not required to purchase or rent any product, equipment or service from the Carrier. Carrier assumes no responsibility to Contractor or to third persons for any such services, materials, or equipment, or for the use of Carrier's repair facilities and Contractor hereby expressly agrees to release Carrier from any such responsibility and to indemnify Carrier with respect to any claims arising there from.

   In the event that the Contractor has no monies currently due from the Carrier for services performed, and requests that the Carrier advance money for the purpose of operating capital, the Carrier may do so if it desires. The Carrier shall reserve the right to charge a service fee for such advances, with the Carrier determining the amount of the service fee. In any instance where the Carrier transfer money to the Contractor, the transfer charges through Com-Check, Dial-a-Check or any other money transfer system shall be charged back to the contractor as an expense of operation.

   8. The Contractor has and shall retain sole financial responsibility for all worker's compensation and withholding and employment taxes due to federal, state or local governments on account of drivers, driver's helpers and together workers necessary for the performance of the Contractor's obligations under the terms of this agreement, and is required to provide the Carrier with proof that such insurance is in effect , and Carrier shall be given twenty (20) days' notice prior to any cancellation of the policy. The Contractor agrees to save and hold harmless the Carrier from any claim by driver, driver helpers and other workers used by the contractor or by any Federal, state, or local governmental agency, on account of wages, industrial accident, or Workmen's Compensation claims, withholding, employment taxes, or any other actions arising from the Contractor's relationship with its employees. To fulfill its obligation under this paragraph, Contractor agrees to:

>    A. Maintain in force at all times proper worker's compensation insurance coverage covering all drivers, driver's helpers and laborers used by it in the performance of this agreement; with the Carrier as certificate holder. The Contractor is required to provide the Carrier with a worker's compensation certificate within seven (7) days of contract date. The Carrier may maintain such insurance from a company of its choosing and deduct the cost of such insurance from the compensation and equipment rental due under this agreement.
>
>    B. File all Federal, State and local income, withholding, employment and Federal Highway use tax forms and returns, which it may be required by law to file, on account off itself and all drivers, driver's helpers, and laborers used by it in the performance of this agreement at the time and place which may be specified in the applicable Federal, State, and local laws, and to pay when due all taxes and contributions reported in such form and returns; and
>
>    C. Furnish Carrier with such evidence of compliance with the foregoing, as Carrier shall reasonably require.

   9. The Carrier shall have and maintain a legal obligation as authorized I.C.C. Carrier to maintain insurance coverage for the protection of the public, pursuant to commission regulation under 49 USC 10927. The Carrier shall require the Contractor to obtain Michigan no-

fault insurance Primary Liability Insurance Coverage, Contingent liability (bobtail), and Physical damage insurance at the actual cash value of the equipment. The Contractor shall name Carrier with a twenty (20) day notice of cancellation. In the event that Contractor allows this coverage to lapse during the period of this lease, the Carrier shall be allowed to obtain coverage in the amounts specified and deduct the amount of such coverage from the contractor's monies due for services performed. In the event that the Carrier will provide the contractor with a bill outlining the charges and deduction relating to the coverage.

The Carrier shall provide the cargo insurance for the contractor, and the contractor will be charged back for the cost of this coverage. However, in the event of any cargo claim from accident, mishandling of cargo, or in the event of any cargo damages or shortages of product incurred while loading, while unloading or while in transit, that result in a cargo claim and monetary charge to the Carrier, the Carrier will deduct the amount of the claim and any accessorial charges that are related to the claim from the Contractor. The Carrier shall have the full amount of time extended both shipper and carrier by the Interstate Commerce Commission in settling claims, to deduct these charges from the Contractor. The Carrier will provide the contractor with written explanation and itemization for all deduction. In the event that incidental accident charges such as wrecker bills, labor charges, equipment damages deductibles, cargo damage, property damage, and any other costs are incurred by the Carrier in an accident involving the contractor or any of the Contractor's employees, the Carrier shall have the right to charge these items back to the Contractor and to deduct these charges from monies due to Contractor for work performed.

10. The Carrier will provide all identification at contractor's cost required by any governmental agencies to be affixed to equipment and Contractor agrees that such identification shall be removed and returned to Carrier upon termination of this agreement. Contractor shall present the equipment to the previous letterings or markings, and if the Carrier prior to application of identification needs any preparation of the vehicle, the contractor shall pay the cost of this preparation.

11. The Contractor shall exercise all diligent efforts to conduct his operation under this agreement to assure continued customer satisfaction.

In order to meet the Carrier's obligations to the shipper and consignee and in order for the Carrier obligations to the shipper and consignee, and in order for the Carrier to fulfill his obligation under the Interstate Commerce Act, the Contractor shall advise the Carrier of the progress of the haul at such intervals as the Carrier shall reasonably request. The Contractor shall as the Carrier shall reasonably request. The Contractor shall advise the carrier by telephone upon loading and delivery, the contractor shall immediately advise carrier of any fact, which will prevent contractor from performing any hauling services in accordance with the terms applicable to the particular movement, and the Carrier shall have the right to deduct from Contractor's monies due for services performed, any amount paid, due to the Contractor's failure to so advise the Carrier.

The Carrier shall have the right to impose fines on the Contractor for failing to follow the calling procedures set down by the Carrier or the Carrier's customers. The Carrier shall set the amount of these fines and shall have the right to deduct these fines from the monies to the Contractor. The Carrier shall not exercise its right to request progress calls or other advisements so as to interfere with violate the contractor's right to select routes within the scope of the carrier authority or his right in general to exercise discretion and judgment of and Independent Contractors in performance and exercise of contractor's rights.

12. This agreement shall be in effect for one year and from year to year thereafter until

breached by either party or until terminated. Either party may terminate this lease at any time from the effective date by giving written notice by mailing or delivering to the other party at the address listed below, two copies of a written notice of termination. Termination shall be effective either upon receipt of the notice of termination from the other party or at such latter date as may be specified in that notice. The party receiving notice of termination shall receipt the copy of such notice and return such receipted copy to the other party. No equipment may be replaced, retired, or substituted without the full consent of the carrier. All signs, lettering and markings must be removed within twenty-three (23) hours of lease cancellation. Final settlement and payment of any sum or sums due shall be made on or before forty-five days before termination of this agreement except where permits, plates, identification signs and other company documents have not been returned to the carrier.

13. If in the opinion of the Carrier, Contractor has breached this agreement in such a manner as to subject Carrier liability to any shipper consignee or governmental authority, the Carrier may take possession of the commodities being hauled by the Contractor and complete shipment. Contractor shall reimburse Carrier for; or Carrier may deduct from contractor, any cost, expenses or damages incurred by the Carrier result of the Carrier taking possession of the commodities completing the shipment, including but not limited to costs of re-handling and transferring the commodities, hauling expenses, and damages paid to the shipper or consignee.

14. In the event where the Contractor is involved in the accident while operating the equipment listed in exhibit "A" whether under load for the Carrier or not, the Contractor must immediately notify the Carrier official. This must be followed by a written accident report to be completed by contractor and submitted to carrier's office as soon as possible.

15. An escrow account in the amount of one thousand dollars ($1000.00) will be kept by the Carrier for each Contractor to account for any unexpected costs that may occur. The Carrier reserves the right to retain the funds for a period of 120 days to ensure that funds are available to pay for the cost of IFTA taxes accumulated by the Contractor during contract period.

16. This agreement shall become effective at the date and time reflected on the equipment receipt attached as Exhibit "A". When possession of equipment is surrendered by Carrier to Contractor, Contractor shall furnish a similar receipt to Carrier and at the same time return to Carrier all identification devices and other property furnished by Carrier to Contractor.

17. This agreement constitutes the entire agreement and understanding between the parties and shall not be modified, altered, changed or amended in any respect unless in writing, and signed by both parties except that a lease of equipment agreement as required by regulating authorities shall be signed by the parties and submitted to state regulatory authority requesting the same.

18. The parties intend to create by this agreement the relationship of Carrier and Independent Contractor and not an Employer-Employee relationship. Neither the Contractor nor its employees are to be considered employees of the Carrier at any time, under any circumstances or for any purpose.

19. The parties agree that this lease shall be interpreted in accordance with provision of 49 CFR 1057, being the Interstate Commerce Commission rules and regulations with regard to leases and the following subsections are included herein in express satisfaction of and in order to comply with those rules and regulations:

A. Carrier shall not have exclusive use and control of the equipment covered by this lease for the duration thereof.

B. Contractor shall be responsible for cost of fuel, fuel taxes, empty mileage, tolls, ferries, base plates, and licenses including Michigan fuel decal, Ohio Public Utilities Tax decal, Idaho Motor Vehicle registration, New Mexico special fuel permit and vehicle registration.

C. Contractor shall not be required to purchase or rent any products, equipment or services from the Carrier as a condition of entering into this lease arrangement.

D. In the event that Contractor is charged for property damage, Carrier shall furnish to owner a written explanation and itemization of any such deductions for cargo or property damage and from any compensation of money owed to the Contractor. Such written explanation and itemization must be delivered to owner before deductions are made.

E. Payments of amounts due hereunder to Contractor shall be paid within twenty-one (21) days after submission of D.O.T. required log books, and signed delivery receipts documenting any discrepancies in the quantity or condition of the cargo from that stated on the delivery receipts by the shipper, consignor, or consignee.

F. Contractor shall be responsible for the loading or unloading of the equipment covered by this lease, and it is agreed between the parties that the compensation for any such loading or unloading service. Contractor shall take full responsibility for any over loading of vehicle and agree to pay all damages suffered as a result of the overload. Loading and unloading shall consist of the actual physical labor involved in the manner and methods required by the Carrier, shipper and their respective customers, and accepting responsibility for the actual physical count of the product being loaded or unloaded, and providing the carrier with signed bills of lading verifying this.

20. This is one of three executed copies of this lease. One copy is kept by the leaser and one copy for Michigan Public Service Commission application and one copy in the equipment unless a short form lease as shown in Exhibit "C" is kept with the equipment.

DATE: 12/02/2019

VELIC TRANSPORTATION INC

Signature

HASIC LLC

Signature

## LEASE AGREEMENT

## LIST OF EQUIPMENT LEASED

| UNIT NO | YEAR | MAKE | VIN# |
|---|---|---|---|
| 1104 | 2003 | VOLVO | 4V4NC9TJ63N347446 |

RECEIPT FOR ABOVE EQUIPMENT BY LESSEE

The undersigned LESSEE hereby acknowledges the receipt of the Equipment above described this **2nd day** of **December 2019** at **ONE** o'clock.

**VELIC TRANSPORTATION  INC**        BY: *[signature]*

RECEIPT BY LESSOR

The undersigned LESSOR hereby acknowledged the receipt of the Equipment above described from the LESSEE this ____ day of _____ at **ONE** o'clock.

**CONTRACTOR
BY:**_____

## EXHIBIT "B"
## SCHEDULE OF PAYMENTS

Total payments for services rendered including proven detention and accessorial services (excluding Export-Import shipments), benefits due and for the use of the requirement herein described shall be the percentage of the gross revenue listed below for each type of, or combination of, equipment based upon the revenues derived Lessee from the transportation of goods by said equipment.

Straight truck herein listed used in combination:

____75__% of the Gross Revenue off regulated freight.

____75__% of the Gross Revenue on exempt commodities.

____70__% of the Gross Revenue when using company-owned specialized equipment.

____85__% less insurance costs when using Contractor-owned trailer.

**Contractor**
HASIC LLC_____
Name

███████████  _____
Address

CENTERLINE_____MI_____48015
City            State      Zip Code

**Carrier**
VELIC TRANSPORTATION INC
Name

35375 GROESBECK HWY
Address

CLINTON TOWNSHIP, MI_____48035
City            State      Zip Code

VTI _____     HASIC LLC _____     DATE

                                                        12/02/2019

**EXHIBIT "C"**
**SHORT FORM LEASE**

| UNIT NO | YEAR | MAKE | VIN# |
|---------|------|------|------|
| 1104 | 2003 | VOLVO | 4V4NC9TJ63N347446 |

    This short form lease is to be carried in equipment. Terms and conditions of said Lease in possession of Leaser and Lessee. Said Lease is entered into this 2nd **day of December 2019** and is effective for one year, and from year to year thereafter until terminated.

**Contractor**
HASIC LLC
Name

▬▬▬▬▬▬▬
Address

CENTERLINE    MI    48015
City    State    Zip Code

**Carrier**

VELIC TRANSPORTATION INC
Name

35375 GROESBECK HWY
Address

CLINTON TOWNSHIP, MI    48035
City    State    Zip Code

VTI        HASIC LLC        DATE

12/02/2019


